UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREGORY M. REAGAN, DUSTINE REAGAN, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-2478 |
| | § | |
| US BANK NATIONAL ASSOCIATION, as trustee for CREDIT SUISSE FIRST BOSTON 2005-8, *et al.*, | § § § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM ORDER & OPINION**

Pending before the court are defendants' motions for summary judgment on plaintiffs' claims (Dkt. 15), for adequate protection (Dkt. 16), and for summary judgment on defendant U.S. Bank's counter-claims (Dkt. 17). Upon consideration of the motions, the defendants' supplemental motion, the plaintiffs' responses, and the applicable law, the motion for summary judgment on plaintiffs' claims (Dkt. 15) is GRANTED. Defendant US Bank's motion for summary judgment on its counterclaim is DENIED. And, defendants' motion for adequate protection is DENIED AS MOOT.

**BACKGROUND**

In March of 2005, the plaintiffs, Gregory and Dustine Reagan, executed a no recourse Promissory Note pledging their home as collateral. As a part of the Note, the Reagans acknowledged that the principal balances of all outstanding loans—including the Note—did not exceed 80% of the fair market value of their home, and that they had not paid any fee or charge not disclosed in the HUD-1 or HUD-1A Settlement Statement. Additionally, the Reagans executed an Escrow Waiver Agreement which provided that the lender waived its right to require the Reagans to escrow for taxes

and insurance as long as the Reagans paid the insurance and taxes when due. Failure to pay would revoke the waiver.

In 2008, the Reagans failed to pay property taxes. The loan servicer, America's Servicing Company ("ASC"), increased the Reagans' monthly mortgage payment to include escrow for insurance and taxes. The Reagans failed to make their mortgage payments. And in December 2008, ASC notified the Reagans that unless they brought the payments current, ASC would accelerate the Note. However, ASC also offered the Reagans a special Forbearance Agreement, which allowed the Reagans to make four payments over the next four months to bring the Note current. ASC also agreed to consider, but did not guarantee, a loan modification if the Reagans completed the four payments in the Forbearance Agreement.

The Reagans made three of the four payments, but failed to make the fourth. ASC once again notified the Reagans that they were in default and warned that unless the Reagans cured the default, the entire Note would be accelerated. The Reagans requested a loan modification, and ASC helped them apply for a federal loan modification program. However, the Reagans were not approved for the program.

On March 29, 2010, defendants filed for judicial foreclosure. In response in June 2010, the Reagans filed the instant action in state court, claiming (1) violations of Article XVI, Section 50 of the Texas Constitution; (2) negligent misrepresentation; (3) breach of contract; and (4) violation of the Texas Deceptive Trade Practices Act. Defendant US Bank National Association removed the case to this court. The Reagans amended their complaint, adding Wells Fargo Home Mortgage, Inc. d/b/a America's Servicing Company as a defendant. The Reagans have made no payments on the Note since filing their suit in state court. Additionally, the Reagans have not pursued discovery in this case—except for their untimely responses to requests for admissions filed as a part of their

response to defendants' supplemental motion for summary judgment—despite the entry of a Rule 16 Scheduling Order cutting off discovery on June 1, 2011. Defendants now move for summary judgment on the Reagans' claims. US Bank also moves for summary judgment on its counterclaim for judicial foreclosure.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986); *Stahl v. Novartis Pharms. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). The party moving for summary judgment must show the absence of a genuine issue of material fact but need not negate the elements of the nonmovant's case. *Exxon Corp. v. Oxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997).

### ANALYSIS

**1.     Request for Extension of Discovery Deadline**

In their response to the defendants' motions for summary judgment, the plaintiffs argue that they need more time for discovery of materials from the mortgage company. Further, they argue that they should be allowed this time because the scheduling order gives them until November 10, 2011 to complete discovery. However, the discovery cutoff in this case was June 1, 2011.

Shortly after this case was removed, the court entered an order for initial pretrial and scheduling conference, requiring a proposed Rule 16 Scheduling Order from the parties and setting forth the requirements for the proposed order. Dkt. 2. The parties did submit a proposed order but it did not meet many of the court's requirements. Dkt. 4. The proposed order set the discovery cut-

3

off for November 10, 2011. The court did not enter the proposed order. Instead it entered a different order with dates which complied with the court's requirements. Dkt. 6. The Rule 16 Scheduling Order set the cutoff date for discovery for June 1, 2011.

When a party proceeds pro se, the court mails copies of all orders to the address given by the pro se party. This was true in the case of the Rule 16 Scheduling Order. The address given the court by the Reagans is a valid address as evidenced by their response to the motions for summary judgment, which were mailed to that address. Parties, even parties proceeding pro se, have a responsibility to read and abide by all of the court's orders. *See Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991) (internal quotation omitted) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law."). Therefore, in order for the Reagans to be granted an extension of the discovery deadline, they must meet the standard under Rule 16.

Rule 16 allows the schedule to be modified "only for good cause." FED. R. CIV. P. 16(b)(4). Good cause requires a party to demonstrate "that the deadline[] cannot reasonably be met despite the diligence of the party needing the extension." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008) (internal quotations omitted). The Reagans have failed to demonstrate good cause for an extension of the discovery deadline or diligence in pursuing discovery up to this point. Therefore, their request for an extension is denied.

**2.     The Reagans' Claims Against Defendants**

The Reagans bring four causes of action: (1) violations of Article XVI, Section 50 of the Texas Constitution; (2) negligent misrepresentation; (3) breach of contract; and (4) violation of the Texas Deceptive Trade Practices Act.

A.      Article XVI, Section of the Texas Constitution

The Reagans allege that defendants violated the Texas Constitution because the Reagans' home equity loan (1) was not made without recourse against the Reagans; (2) added to the principal amount for all other outstanding loans secured by the property totaled more than 80% of the property's value; and (3) required the Reagans to pay a fee or fees which in aggregate exceeded 3% of the original principal amount of the Extension of Credit. Article 15, Section 50 of the Texas Constitution provides in relevant part that

> The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:
>   • • •
> (6) an extension of credit that:
>   • • •
> (B) is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made;
> (C) is without recourse for personal liability against each owner and the spouse of each owner, unless the owner or spouse obtained the extension of credit by actual fraud;
>   • • •
> (E) does not require the owner or the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit.

TEX. CONST. art XVI § 50(a)(6).

Defendants first argue that the Reagans allegations' pursuant to § 50(a)(6)(C) concerning the Note's recourse provisions are factually incorrect. Defendants adduce copies of the Note and the Home Equity Affidavit, both indicating that the extension of credit is made without recourse as to the Reagans. The plaintiffs did not respond to this argument or proffer any evidence to the contrary. Accordingly, their cause of action based on § 50(a)(6)(C) fails.

5

Defendants next argue that the Reagans' § 50(a)(6)(B) cause of action based on the aggregate amount of the principal balances allegedly totaling more than 80% of the value of the home is barred by the statute of limitations. Texas courts have held that the date a cause of action accrues for the purposes of § 50(a)(6)(B) is the date on which the extension of credit is made. *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.2d 834, 840 (Tex.App.–Dallas 2008, no pet.). Additionally, since § 50(a)(6)(B) has no stated statute of limitation, the residual four-year statute of limitations applies. *Id.* at 839 (citing TEX. CIV. PRAC. & REM. CODE § 16.051). In this case, the extension of credit was made on March 1, 2005. Therefore, the statute of limitations ran on the Reagans' § 50(a)(6)(B) claim on March 1, 2009. This case was originally filed in state court on June 10, 2010—over a year after the statute of limitations had run.

Plaintiffs argue that they only discovered the value of their home and the application of § 50(a)(6)(B) recently. The court assumes that they, therefore, argue that the statute of limitations should be tolled based on the discovery rule. The discovery rule operates to toll the statute of limitations in cases where "the nature of the injury is inherently undiscoverable and the evidence of injury is objectively verifiable." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex.1996) (internal quotation omitted). Since the value of the Reagan's home was not inherently undiscoverable in 2005 when they applied for and were given the extension of credit, the discovery rule does not apply in their case. Accordingly, their § 50(a)(6)(B) claim is barred by the statute of limitations and fails as a matter of law.

Plaintiffs' final § 50(a)(6) claim fails as well. Plaintiffs do not identify any fee that they were charged which would violate Article XVI § 50(a)(6)(E)—that the lender charged fees in excess of 3% of the principal of the extension of credit. The burden to show evidence giving rise to a genuine issue of material fact lies with the nonmovant when, as here, the movant has pointed to a lack of

evidence. FED. R. CIV. P. 56. Therefore, all of the plaintiffs' claims under Article XVI § 50 of the Texas Constitution fail as a matter of law.

### B. Negligent Misrepresentation

Plaintiffs also claim that defendants are liable for the common law tort of negligent misrepresentation stemming from the communications between plaintiffs and defendants regarding the Note, the ancillary agreements, and the potential loan modification. Defendants argue that summary judgment is appropriate on the plaintiffs' claims for negligent misrepresentation because the plaintiffs cannot prove either that defendants did not exercise reasonable care in communicating information to the plaintiffs or that plaintiffs suffered damages. Plaintiffs counter that defendants specifically represented to plaintiffs that the plaintiffs would get a loan modification. Additionally, in their complaint, the Reagans allege that defendants made misrepresentations while servicing the loan and while attempting to resolve delinquency issues on the loan. They further allege that because they did not receive the promised loan modification, they were damaged by having to pay the now-accelerated payments on the Note and because having to make these accelerated payments damaged Mr. Reagan's ability to properly fund his business, causing him to lose income.

The court holds that summary judgment is appropriate but for different reasons from those urged by defendants. In Texas, the tort of negligent misrepresentation requires an injury independent of a breach of contract. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998) (per curiam). To determine whether a cause of action sounds in contract or tort, courts look to the source of the duty allegedly breached, and to the nature of the remedy sought. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998). In this case, the nature of the remedy sought dictates that the Reagans' cause of action sounds in contract. "When the injury is only the economic loss to the subject of a contract itself, the action sounds in

contract alone." *Id.* (internal quotations omitted). The Reagans allege that they are damaged because they have had to pay money either already due to the defendants on the Note or imposed by the terms of the Note. They also allege that they are damaged because they will lose their house—the security for the Note. They finally allege that the payments that they were contractually obligated to make on the Note created a financial hardship which damaged Mr. Reagan's business. The court sees no legally cognizable causal connection between allegedly negligent misrepresentations on the part of the defendants and the decline of Mr. Reagan's business. Additionally, all the damages alleged by the plaintiffs are benefit of the bargain damages, which are not available as a remedy for negligent misrepresentation. *DSA, Inc.*, 973 S.W.2d at 663–64. The plaintiffs' cause of action for negligent misrepresentation fails.

### C. Breach of Contract

Plaintiffs also claim that defendants are liable for breach of contract. Defendants move for summary judgment on the Reagans' breach of contract claim because they argue that the plaintiffs cannot meet all of the essential elements for a valid claim. The court agrees. In Texas, to prevail on a breach of contract claim, plaintiffs must demonstrate "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained as a result of the breach." *Williams v. Unifund CCP P'ners Assignee of Citibank*, 264 S.W.3d 231, 235–36 (Tex.App.–Houston [1st Dist.] 2008, no pet.). Therefore, the Reagans must demonstrate that they performed on the contract. However, they admit in their response to the motion for summary judgment that they failed to make their payments on the Note, breached the Escrow Waiver Agreement, and failed to make their payments on the Forbearance Agreement. In each case, the plaintiffs failed to perform. The alleged oral agreement between the Reagans and the defendants to modify the loan is not a contract as a matter of law. *Id.* ("To be

8

enforceable, a contract must be sufficiently certain to enable a court to determine the rights and responsibilities of the parties."); *see also* TEX. BUS. & COM. CODE § 26.01 (Statute of Frauds). Accordingly, the Reagans cannot sustain their claim for breach of contract because they admit that they failed to perform.

### D. Texas Deceptive Trade Practices Act

Finally, Plaintiffs claims that defendants violated the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE § 17.01 *et seq.* Defendants argue that plaintiffs lack standing to bring a claim under the DTPA because plaintiffs are not consumers as defined by the Act. The Reagans made no response to this argument. Under the Act, a consumer is "an individual . . . who seeks or acquires by purchase or lease, any goods or services." § 17.45(4). An extension of credit alone, even where secured by property, is not enough to confer consumer status on a borrower. *First State Bank v. Keilman*, 851 S.W.2d 914, 928 (Tex.App.–Austin 1993, writ denied) (collecting cases). The extension of credit must be for the purpose of purchasing a good or service. *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566–67 (Tex. 1984). Here, the Reagans already owned their home, or were already purchasing it through a separate mortgage. Therefore, the home was merely collateral for the loan, not a good being purchased with the funds made available by the Note. *Keilman*, 851 S.W.2d at 928–29. Thus, the court concludes that the Reagans' claim under the Texas DTPA also fails.

### 3. US Bank's Counterclaim for Foreclosure

US Bank moves for summary judgment on their counterclaim for foreclosure. The court has examined the record and can find no pleading in which the defendants pleaded a counterclaim. Therefore, the motion is DENIED.

**4.     Defendants' Motion for Adequate Protection**

Defendants also move the court to order plaintiffs to pay into the registry of the court the equivalent of the plaintiffs' monthly mortgage payment. Since the court has dismissed the plaintiffs' claims, no obstacle prevents the defendants from filing for foreclosure in the proper forum. Therefore, the motion is DENIED AS MOOT.

## CONCLUSION

For the reasons detailed above, the defendants' motions for summary judgment on the plaintiffs' claims (Dkt. 15) are GRANTED and JUDGMENT is entered for the defendants as to all of the plaintiffs' claims. US Bank's motion for summary judgment on its counterclaims (Dkt. 16) is DENIED. And, defendants' motion for adequate protection (Dkt. 17) and any other pending motions are DENIED AS MOOT.

It is so ORDERED.

Signed at Houston, Texas on October 6, 2011.

_____
Gray H. Miller
United States District Judge